# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## EX PARTE NORFOLK RAILWAY AND LIGHT COMPANY.

### June 11, 1925

Argued before Judge Chichester took his seat.

1. STREET RAILROADS—*Charter of Street Railway Company Granted by State—Objection by a City to Amendment of the Charter—Case at Bar*—In the instant case the charter of a street rai way company was granted by the State in 1866, subject to the right of the State to modify or alter it. The company applied to the State Corporation Commission to amend the charter by omitting therefrom the provision requiring the company to pave between the tracks and two feet beyond the rails. The city intervened before the Commission and objected to the omission of this provision, on the ground that the charter was a contract between the company and the city.

   *Held:* That the city had no right to intervene for the purpose of objecting to the amendment of the charter. The city could not add to the rights and privileges conferred, nor detract from the duties and obligations imposed by the charter. It had ample power, under the general law in force at the time (Code 1860, chapter 56, page 327, section 23), to protect its rights in the franchise granting the company use of its streets.

2. STREET RAILROADS—*Grant of Charter by State—Charter as a Contract with State or City*—When the General Assembly, in 1866, granted a street railway a charter subject to the right of the State to modify or alter it, the charter was a contract, but it was a contract to which the city was not a party. But this did not prevent the Corporation Commission from refusing an amendment to the charter objected to by the city, if it had power to do so, and a proper case was made for the exercise of the power. But the duty imposed upon the company to pave between the tracks and two feet on each side was a duty to the State, which has supreme control over city streets, subject to constitutional restrictions, and not a duty to the city and from the duties imposed by the charter the city could not relieve the company, in whole or in part.

   CORPORATIONS—*Charter—Charter as a Contract.*—A charter of incorporation is a contract between the State and the corporat on, in which no person is legally interested except the part es thereto. Hence

they may, by mutual consent, modify or repeal it at will, though other persons may have been benefited by the original grant or some obligation imposed thereby.

4. Corporations—*Creation of Corporations and Amendment of Charters—Constitution of 1902, Section 154.*—By section 154 of the Constitution of 1902, the granting of charters and amendment is put on the same footing. Both are to be provided for by general laws. So, likewise, the "rights, powers and privileges" of corporations are to be conferred by general laws only. These general laws, of course, can be enacted only by the legislature. The State Corporation Commission has no more power in this respect than the Supreme Court of Appeals.

5. Corporations—*State Corporation Commission—Granting and Amending Charters—Duties of Commission Ministerial.*—The duties of the State Corporation Commission, under section 154 of the Constitution of 1902 and sections 3746, 3780 and 3777, of the Code of 1919, in the granting of charters and amendments thereof are purely ministerial, and when the preliminary requirements have been complied with, it has no right or power to refuse the application. The Constitution forbids the vesting of "authority in such matters" in "any tribunal or officer," except to the extent and for the purpose of ascertaining whether "the requirements of the law" which would entitle the applicant to a charter, or an amendment, the preliminary requirements, had been complied with.

6. Corporations—*Charter—Amendment of Charter.*—The State, by prescribing how the charter of a corporation, or amendment thereto, should be obtained, has consented in advance to the validity thereof, if the methods prescribed be followed. No "authority" or discretion is left in the Commission, except to see that preliminary requirements have been complied with. Whether this was wise or not is not a legitimate subject of inquiry by the court.

7. Corporations—*Creation of Corporations—Amendment of Charters—General Laws.*—The plain intent of the Constitution is that the creation of corporations, the amendment and extension of their charters, and their rights, powers, and privileges, shall be governed by general laws applicable to all of their class alike, and that no opportunity shall be afforded to any tribunal or officer to show favoritism to any man or set of men. Even the power of the General Assembly is restricted to the enactment of general laws in this matter. Rights, powers, and privileges of corporations not found in general laws do not exist.

Appeal from an order of the State Corporation Commission.

*Reversed.*

The opinion states the case.

*E. Randolph Williams* and *T. Justin Moore*, for the appellant.

*R. W. Peatross* and *John B. Jenkins, Jr.*, for the appellee.

BURKS, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission, refusing an amendment of the charter of a street railway company.

[1—3] The Norfolk City Railroad Company was incorporated by the General Assembly of Virginia on January 4, 1866, subject to the right of the State to modify or alter its charter. Acts 1865-6, page 320. The Norfolk Railway and Light Company is the successor of the first mentioned company and entitled to all of its charter rights and privileges, and as such applied to the State Corporation Commission to amend its charter in so far as it consisted of the charter of the Norfolk City Railroad Company. The amendment consisted in omitting sections 3 and 4 of the charter of the Norfolk City Railroad Company. There was no opposition to the omission of section 4, and it need not be further noticed. Section 3 was as follows:

"3. That said company shall keep that portion of the street occupied by its track or tracks, embracing the space between said tracks and a distance at least two feet beyond the outer rails thereof, well paved and in good repair, without expense to the corporation of the city of Norfolk; and the rails used for said track shall be of the most approved pattern for such purposes; and shall be laid at the distance of five feet-

five inches, between the outer ridges or flanges thereof, and upon an even surface with the adjoining pavement, so as to form as little obstruction as practicable to the passage of carriages or other vehicles along or over said tracks."

The city of Norfolk intervened before the Commission and objected to the omission of section 3 on the ground, amongst others, that "the original charter of the Norfolk City Railroad Company was a contract between the company and the city, inasmuch as the provision in question, section three, was inserted in the charter of the company for the benefit of the city of Norfolk; it being urged that the State could not eliminate these provisions, in the absence of consent of the city, without impairing vested contract rights of the city, which were protected by the Federal Constitution against impairment."

It is true that the charter was a contract, but it was a contract to which the city of Norfolk was not a party. The city could not add to the rights and privileges conferred, nor detract from the duties and obligations imposed by the charter. It had ample power, under the general law in force at the time (Code 1860, chapter 56, page 327, section 23), to protect its rights in the franchise granted the company to use its streets, but the duty imposed by section 3 was a duty to the State, which has supreme control over city streets, subject to constitutional restrictions, and not a duty to the city, and from the duties imposed by the charter, the city could not relieve the company, in whole or in part. Such, in effect, was the holding in *Norfolk & P. Co.* v. *City of Norfolk*, 115 Va. 169, 78 S. E. 545, Ann. Cas. 1914 D, construing this same charter. A charter of incorporation is a contract between the State and the corporation in which no person

is legally interested except the parties thereto.  *Collins v. Doyle*, 119 Va. 63, 69, 89 S. E. 88.  Hence they may, by mutual consent, modify or repeal it at will though other persons may have been benefited by the original grant or some obligation imposed thereby.

It follows from what has been said that the city of Norfolk had no right to intervene for the purpose of objecting to the amendment of the charter.  But this did not prevent the Commission from refusing the amendment if it had power to do so, and a proper case was made for the exercise of the power.

[4—7] The Constitution of 1902 and the acts passed in pursuance thereof created a complete revolution in the creation, management and control of corporations in this State.  The Constitution created the State Corporation Commission and gave it very ex-· tensive powers, but at the same time certain restraints were imposed, not only on the Commission, but on the legislature as well.

Section 154 of the Constitution is as follows:

"The creation of corporations, and the extension and amendment of charters (whether heretofore or hereafter granted) shall be provided for by general laws, and no charter shall be granted, amended or extended by special act, nor shall authority in such matters be conferred upon any tribunal or officer, except to ascertain whether the applicants have, by complying with the requirements of the law, entitled themselves to the charter, amendment or extension applied for, and to issue, or refuse, the same accordingly.  Such general laws may be amended or repealed by the General Assembly, and all charters and amendments of charters, now existing and revocable or hereafter granted or extended, may be repealed at any time by special act.  Provision shall be made, by general laws, for the ·

voluntary surrender of its charter by any corporation, and for the forfeiture thereof for nonuser or misuser. The General Assembly shall not, by special act, regulate the affairs of any corporation, nor, by such act, give it any rights, powers or privileges."

The language of this section is so clear and explicit that we hesitate at an interpretation. The granting of charters and amendment is put on the same footing. Both are to be provided for by general laws. So, likewise, the "rights, powers and privileges" of corporations are to be conferred by general laws only. These general laws, of course, can be enacted only by the legislature. The Commission has no more power in this respect than this court. No matter what language is contained in a charter issued by the Commission, or what powers the charter purports to confer, only such powers are conferred as are conferred by the general laws. "The General Assembly shall not, by special act, regulate the affairs of any corporation, nor, by such act, give it any rights, powers or privileges." Not only so, but no authority to grant, amend or extend charters shall "be conferred upon any tribunal or officer, except to ascertain" whether or not the 'applicant has complied with the law entitling him to such charter, amendment or extension. Such, we think, is the plain meaning of the section of the Constitution quoted.

In pursuance of this section the General Assembly, by section 3746 of the Code, provided that "the Commission shall issue all charters and all amendments, extensions and renewals of charters, upon application, when the incorporation laws of the State have been complied with."

Section 3780 of the Code provides that "at any time after organization, any corporation organized

under the laws of this State may make any amendment increasing or decreasing its capital stock, or any other alteration or extension of its charter that it may desire, in manner following:" etc.*

Section 3777 gives very extensive powers to "every corporation of this State," among them, "to exercise all other powers granted to corporations generally by the laws of this State."

From these quotations it seems too plain for argument that the duties of the Commission in the granting of charters and amendments thereof are purely ministerial, and that, when the preliminary requirements have been complied with, it has no right or power to refuse the application. The Constitution forbids the vesting of "authority in such matters" in "any tribunal or officer," except to the extent and for the purpose of ascertaining whether "the requirements of the law" which would entitle the applicant to a charter, or an amendment—the preliminary requirements—had been complied with. The General Assembly has, by general laws, provided for such charters and amendments. The State has thus, by prescribing how such charters or amendments shall be obtained, consented in advance to the validity thereof, if the methods prescribed be followed. No "authority" or discretion is left in the Commission, except to see that preliminary requirements have been complied with. Whether this was wise or not, is not a legitimate subject of inquiry by this court. The plain intent of the Constitution is that the creation of corporations, the amendment and extension of their charters, and their rights, powers and privileges, shall be governed by general laws applicable to all of their class alike, and

---

*This section was amended by Pollard's Code Supp. 1922, page 276, but the amendment does not affect the present controversy.

that no opportunity shall be afforded to any tribunal or officer to show favoritism to any man or set of men. Even the power of the General Assembly is restricted to the enactment of general laws in this matter. Rights, powers and privileges of corporations not found in general laws do not exist.

The right of a corporation to voluntarily surrender its charter is contained in the same section of the Constitution (154) now under consideration, and in *Jeffries* v. *Commonwealth*, 121 Va. 425, 93 S. E. 701, after full argument, and a very thorough and careful consideration, it was held that the issuance of a certificate of dissolution was a purely ministerial act which the Commission could not refuse to grant if the preliminary requirements were complied with. Though not necessary to the decision of the case, it was said, incidentally, that, in the creation of corporations, "the Commission can only act ministerially; and the legislature could not, if it desired, confer upon the Commission any judicial or discretionary power in regard thereto."

For the reasons stated, the order of the State Corporation Commission, dated August 2, 1924, will be reversed, and the case remanded to the Commission, with direction to issue the certificate of amendment prayed for by the appellant.

*Reversed.*