# Richmond

COMMONWEALTH OF VIRGINIA, AT THE RELATION OF GODDIN, GOOD-
RIDGE & ROBERTSON, A PARTNERSHIP V. JAMES T. PHELPS
& CO., INC.

April 23, 1956.

Record No. 4497.

Present, All the Justices.

The opinion states the case.

*Aubrey R. Bowles, Jr.* (*H. Armistead Boyd, Jack N. Herod* and *Bowles, Anderson & Boyd* on brief), for the appellant.

*Paul M. Shuford* (*John J. Wicker, Jr.,* and *Wicker, Baker & Shuford* on brief), for the appellee.

SMITH, J., delivered the opinion of the court.

The Department of Highways, referred to herein as the Department, has from time to time in the past called for sealed bids on fire

insurance for its properties known as Hampton Roads ferry terminals. For the years prior to 1955 the bids for insurance coverage on this property have been identical because they were submitted by agents of companies selling insurance at standard or manual rates as fixed by the State Corporation Commission. Although the bids in the past have been identical, appellants, Fergus A. Goodridge and Giles M. Robertson, trading as Goddin, Goodridge & Robertson, a partnership, who are duly licensed insurance agents have been successful in obtaining this business.

On April 28, 1955 the Department called for sealed bids on this insurance to be opened on May 9, 1955. This request was in the form of a letter which, in addition to describing the property to be insured and listing certain other information, stipulated that: the entire coverage be in only one policy to become effective on May 20, 1955 for a period of three years; the premiums used by the bidding companies be approved by the Virginia Rating Bureau, and that the company issuing the policy be licensed in Virginia. It was also stipulated that the Department reserved the right to reject any or all quotations and to waive technicalities if deemed by it to be in the best interest of the Commonwealth.

On this occasion, as in the past, appellants and several other insurance agents submitted identical bids, all of which were based on standard rates established by the Commission. Appellants expected their bid to be accepted because, with identical bids, it would be more convenient for the Department to continue to deal with them than to change to a new agent. But when the bids were opened it was discovered that appellee, James T. Phelps & Company, Incorporated, a duly licensed nonresident insurance broker, had submitted a combination bid of nine insurance companies duly licensed to transact insurance in Virginia, each participating in various percentages, that was lower than all the other bids. In its bid appellee said: "We hereby agree to effect insurance coverage * * * meeting all requirements set forth in your specifications dated April 28, 1955." Then after stating the premium offered and the estimated dividends, which were in the sum of $703.27, the nine bidding companies and the proportion of their liability were listed.

One of these companies was authorized by the Commission, pursuant to Code, § 38.1-258, to deviate to the extent of 20% from the standard rates established by the Commission. This company proposed to underwrite 10% of the total risk at 20% less than the

standard rates, the result of which was to reduce the total premium to $562.61 less than that submitted by appellants and the other bidding agents. Hence, the lower premium offered by appellee together with the $703.27 in estimated dividends represented a prospective saving of $1,265.88 to the Department. Appellee's bid was accepted over the objection of appellants.

Immediately after appellee's bid was accepted by the Department, appellants complained to the State Corporation Commission and asked that appellee's bid be declared illegal and void on the grounds that when it was submitted the Commission had not given its consent nor approved the form and special provisions of the combination policy as required by Code, § 38.1-372. The Commission set the complaint for hearing on May 18, 1955, at which time appellee filed a printed form of the proposed combination fire insurance policy and formally requested approval of it by the Commission. In its final order of May 19, 1955, the Commission, Commissioner Hooker dissenting, approved the policy submitted by appellee and held that its bid "was and is a legal and lawful bid in so far as the insurance laws of the State of Virginia are concerned," and that appellee and the nine companies represented by it "were not required before making said bid to secure the consent of the Commission to use a combination form of fire insurance policy nor to obtain approval by the Commission of the form of fire insurance policy to be thereafter issued in the event said bid was accepted." To review this order appellants applied for and obtained this appeal of right.

Appellants admit that the rate of premium offered by each of the nine companies participating in appellee's bid had previously received the approval of the Commission. They contend, however, that appellee's bid is illegal and that therefore its proposed combination policy must be declared void *ab initio* on the sole ground that the provisions of Code, § 38.1-372 were not complied with *before* appellee submitted its bid. The "single issue" presented in the briefs and argued before us is stated in appellants' brief thus: "When consent of the Corporation Commission to the issuance of a special fire insurance policy and approval by the Commission of its form and terms is required by statute, must such consent and approval be obtained prior to the submission of a bid to insure property by means of such policy?"

Code, § 38.1-372 provides: *"Policies Issued by Two or More Companies.*—With the consent of the Commission two or more

licensed companies may issue a combination form of fire insurance policy, using a distinctive title therefor which shall be prominently printed on the policy followed by the names of the several companies obligated thereunder and the home offices of such companies. The policy shall be executed by the proper officer or officers of each company. Before any such policy shall be issued the form and any terms thereof, which are in addition to the standard provisions set out in §§ 38.1-365 and 38.1-366 shall be approved by the Commission. Such terms shall not be inconsistent with the standard provisions, and shall be placed under a separate title headed as follows: 'Provisions specially applicable to this combination policy.' Such special provisions shall contain in substance the following:

"(a) That the insurers executing the policy are severally liable for the full amount of any loss or damage according to the terms of the policy or for specified percentages or amounts thereof aggregating the full amount of insurance under the policy; and

"(b) That service of process upon, or notice of proof of loss required by the policy and given to any of the insurers executing the policy, shall be deemed to be service upon or notice to all such insurers.

"The unearned premium liability on each policy so issued shall be maintained by each insurer on the basis of its liability to the insured, except to the extent such liability is transferred under a valid contract of reinsurance."

It will be observed that this statute provides for the *issuance* of policies of fire insurance by two or more companies and nowhere refers to a bid on or offer of insurance. It provides that, "with the consent of the Commission two or more licensed companies may *issue* a combination form of fire insurance policy," and that before "any such policy shall be *issued* the form and any terms thereof, which are in addition to the standard provisions set out in §§ 38.1-365 and 38.1-366 shall be approved by the Commission." It is then provided that the additional provisions "shall contain in substance" the provisions set out in paragraphs (a) and (b). Since the substance of all the provisions that may be contained in a combination fire insurance policy under Code, § 38.1-372 is expressly set out in the Code, the required consent to the issuance of the policy and the approval of its provisions by the Commission are merely ministerial duties comparable to that performed by it in ascertaining whether articles of incor-

poration or charter amendments comply with the law. See *Norfolk Ry. & Light Co., Ex Parte*, 142 Va. 323, 128 S. E. 602; *Jeffries* v. *Com.*, 121 Va. 425, 93 S. E. 701. It may be concluded therefore that insofar as Code, § 38.1-372 is concerned, a person who offers the insurance therein authorized may proceed with assurance that if the provisions of his proposed policy comply with the statutory requirements it will receive the necessary consent and approval of the Commission.

The provisions of Code, § 38.1-372 do not expressly require the Commission's consent and approval of a combination fire insurance policy prior to the submission of a bid offering the insurance therein authorized, nor can such a requirement be implied from the language employed by it. The failure of the legislature to make such a requirement part of the statute will result in no public harm. On the contrary, it will be more likely to benefit the public by encouraging competitive bidding, a factor that can not be effectively obtained if every bidder can learn from the public records the bid to be submitted by his competitor.

Neither the Department's call for bids nor the bid submitted by appellee contemplated any terms or conditions not sanctioned by the law. And there are no illegal provisions in the policy which was ultimately approved by the Commission prior to the effective date of the insurance contract. This action of the Commission in the instant case conclusively shows that appellee could legally perform the offer contained in its bid, which offer was a promise to furnish legal insurance coverage to become effective on May 20, 1955. The law does not require anything more insofar as the validity of appellee's bid is concerned.

We hold that Code, § 38.1-372 does not require the Commission's consent and approval of a combination fire insurance policy prior to the submission of a bid offering such insurance, and that therefore the bid submitted by appellee is valid. Consequently, the order appealed from is affirmed.

*Affirmed.*